UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT CHRISTOPHER BILLUPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 16-1502 (RJL) |
| ) | |
| LABORATORY CORPORATION OF ) | |
| AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
(January 29, 2017) [Dkt. #10]

**FILED
JAN 30 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia**

Plaintiff Scott Christopher Billups ("plaintiff" or "Billups") brings this action against his former employer, defendant Laboratory Corporation of America Holdings ("defendant" or "LabCorp"), demanding a jury trial and seeking damages for breach of contract. Specifically, Billups alleges that LabCorp breached a binding obligation when it failed to pay him certain sales commissions he believes he was owed pursuant to the company's incentive compensation plan. Before the Court is LabCorp's Motion to Dismiss Plaintiff's Complaint ("Def.'s Mot.") [Dkt. #10]. Upon consideration of the pleadings, relevant law, and the entire record herein, the Motion is GRANTED.

## BACKGROUND

LabCorp hired Billups as an entry-level sales executive in 2007, and in 2009, promoted him to the role of Senior Marketing Executive ("SME"). Compl. ¶¶ 4, 13 [Dkt. #1-1]. As a SME, Billups was entitled to receive incentive compensation for the sale of products and services to accounts within his sales territories. *Id.* ¶¶ 13–17.

Billups' incentive compensation was governed by LabCorp's Senior Marketing Executive Traditional Incentive Compensation Plan ("Plan"). Compl. ¶¶ 16–17.[1] The Plan provides that SMEs may earn monthly commissions based on the "rolling six-month baseline sales total" in the SME's sales territory. *Id.* ¶ 17. Sales territories are "assigned based on a geographical (using zip codes) area," Plan at 3, and "LabCorp reserves the right to 'alter, change, redefine, reduce, or expand the geographic area' of an SME," Compl. ¶ 33 (quoting Plan at 5). LabCorp also "has the sole and exclusive discretion to determine whether an SME should be denied incentive compensation." Plan at 6. Billups' assigned sales territories included locations in Washington, D.C. Compl. ¶ 6.

One account for which Billups received commissions was that of The George Washington ("GW") University Medical Faculty Associates.[2] Billups alleges that he "secured" this account for LabCorp in 2009, *id.* ¶ 7, and that in "early 2011," he and his supervisor, Betsy Lewis, "worked closely with the GW Executive Leadership team to make LabCorp the primary laboratory for the entire GW system," *id.* ¶ 18 (parenthetical omitted). These efforts resulted in the addition of "approximately twenty" GW-affiliated healthcare

---

[1] Billups quotes from the Plan but does not produce a copy with the complaint. LabCorp produces a copy (signed by Billups) with its motion to dismiss. *See* Def.'s Mot., Attach. 1 at ¶¶ 3–4 (Decl. of Cameron R. Argetsinger authenticating copies) [Dkt. # 10-1]; *id.*, Exs. 1 (Plan) and 2 (signature page). Although the Plan was produced by LabCorp, the Court may rely on it without converting LabCorp's motion to one for summary judgment because the Plan is a "document[] upon which the plaintiff's complaint necessarily relies." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks omitted).

[2] The parties incorrectly refer to this entity as the George Washington Medical Faculty Association. *Cf.* The GW Medical Faculty Associates, http://www.gwdocs.com/ (last visited Jan. 29, 2017).

2

offices located in Maryland. *Id.* ¶ 19. According to the complaint, the addition of the Maryland offices "should have resulted in $350,000 to $500,000 in annual commissions" being paid to Billups under the Plan as "the sole SME on the GW sales account." *Id.* ¶¶ 20–21.

Billups reports that he did not receive commissions on sales to GW-affiliated healthcare offices in Maryland. Rather, in July 2011, shortly after the Maryland offices were added to the GW account, Lewis informed Billups that she was going to "even things out" among the sales executives. *Id.* ¶¶ 26, 31. Going forward, Billups would continue to receive commissions on the GW account for sales to GW facilities in the District of Columbia, but two Maryland-based SMEs, Connie Penalosa and Tracy Fuhr, would receive the commissions for sales to GW facilities in Maryland. *Id.* ¶¶ 31–32.

Billups filed this action in the Superior Court of the District of Columbia on April 4, 2016, and served the complaint on LabCorp on July 5, 2016. The one-count complaint alleges that LabCorp breached its contract with Billups, i.e., the Plan, when it "transferred to other LabCorp employees" "sales commissions from revenue obtained from Maryland-based sales from the GW account." *Id.* ¶¶ 49–53. The complaint demands a jury trial, and seeks award of compensatory damages, interest, court costs, and fees. *Id.*, Prayer for Relief, ¶¶ 1–4. LabCorp removed the action to this Court and filed a motion to dismiss, arguing that Billups' claim is barred by the District's three year statute of limitations, and that its decision to transfer the commissions to its Maryland-based SMEs did not breach the Plan. Billups filed an opposition to the motion to dismiss, Pl.'s Resp. to Def.'s Mot. To Dismiss and Supp.'g Statement of P. & A. ("Pl.'s Resp.") [Dkt. #11], and LabCorp

filed a reply, Def. LabCorp's Reply in Supp. of its Mot. to Dismiss Pl.'s Compl. ("Def.'s Reply") [Dkt. #13].

## STANDARD OF REVIEW

LabCorp moves to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the role of the district court is to "assess the legal feasibility of the complaint." *Jones v. Kirchner*, 835 F.3d 74, 80 (D.C. Cir. 2016) (quoting *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 950 (D.C. Cir. 2013)). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This claim must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, it must include factual allegations that, when taken as true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint crosses this threshold "when it contains factual allegations that, if proved, would 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (alteration omitted).

LabCorp also invokes the statute of limitations as an affirmative defense. Such a defense is properly raised on a pre-answer Rule 12(b)(6) motion "when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). "[T]he court should be cautious in granting a motion to dismiss on such grounds," however, "because statute of limitations defenses

often are based on contested facts." *Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014). "[D]ismissal is appropriate only if the complaint on its face is conclusively time-barred." *Id.* (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

## ANALYSIS

### I. Statute of Limitations

LabCorp argues that Billups' breach of contract claim is barred by the statute of limitations. Although Billups disputes that conclusion, both sides agree that District of Columbia law provides the relevant limitation period. Def.'s Mot. 5; Pl.'s Resp. 4.[3] The District's statute provides that actions on a contract "may not be brought" more than three years "from the time the right to maintain the action accrues." D.C. Code § 12–301(7). It is settled that "[a] cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008); *accord Felter v. Kempthorne*, 473 F.3d

---

[3] I agree with the parties that District of Columbia law provides the relevant statute of limitations. My jurisdiction over this case stems from the parties' diversity of citizenship; Billups, a Virginia citizen, seeks more than $75,000 in damages from LabCorp, a citizen of North Carolina and Delaware. *See* Notice of Removal ¶¶ 6–8 [Dkt. #1]; 28 U.S.C. § 1332. Under the *Erie* Doctrine, a federal court sitting in diversity must apply substantive state law, including the applicable state law statute of limitations. *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995). Where, as in this case, the law of more than one state is potentially involved, the federal court looks to the choice-of-law rules of the state in which it sits. *Id.* For this Court, that "state" is the District of Columbia, *see Keefe Co. v. Americable Int'l, Inc.*, 219 F.3d 669, 669–70 (D.C. Cir. 2000) (per curiam), and the District's choice-of-law rules almost always "mandate application of the District's own statute of limitations," *Jones v. Kirchner*, 835 F.3d 74, 81 (D.C. Cir. 2016). Thus, my duty is to apply D.C.'s statute of limitations, and to "achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case." *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21–22 (D.C. Cir. 2014) (internal quotation marks omitted).

often are based on contested facts." *Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014). "[D]ismissal is appropriate only if the complaint on its face is conclusively time-barred." *Id.* (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

## ANALYSIS

### I. Statute of Limitations

LabCorp argues that Billups' breach of contract claim is barred by the statute of limitations. Although Billups disputes that conclusion, both sides agree that District of Columbia law provides the relevant limitation period. Def.'s Mot. 5; Pl.'s Resp. 4.[3] The District's statute provides that actions on a contract "may not be brought" more than three years "from the time the right to maintain the action accrues." D.C. Code § 12–301(7). It is settled that "[a] cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008); *accord Felter v. Kempthorne*, 473 F.3d

---

[3] I agree with the parties that District of Columbia law provides the relevant statute of limitations. My jurisdiction over this case stems from the parties' diversity of citizenship; Billups, a Virginia citizen, seeks more than $75,000 in damages from LabCorp, a citizen of North Carolina and Delaware. *See* Notice of Removal ¶¶ 6–8 [Dkt. #1]; 28 U.S.C. § 1332. Under the *Erie* Doctrine, a federal court sitting in diversity must apply substantive state law, including the applicable state law statute of limitations. *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995). Where, as in this case, the law of more than one state is potentially involved, the federal court looks to the choice-of-law rules of the state in which it sits. *Id.* For this Court, that "state" is the District of Columbia, *see Keefe Co. v. Americable Int'l, Inc.*, 219 F.3d 669, 669–70 (D.C. Cir. 2000) (per curiam), and the District's choice-of-law rules almost always "mandate application of the District's own statute of limitations," *Jones v. Kirchner*, 835 F.3d 74, 81 (D.C. Cir. 2016). Thus, my duty is to apply D.C.'s statute of limitations, and to "achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case." *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21–22 (D.C. Cir. 2014) (internal quotation marks omitted).

1255, 1259 (D.C. Cir. 2007). The question the Court must answer, then, is when the alleged breach occurred in this case.

Billups pleads in his complaint that LabCorp breached the Plan "[a]s a result" of its decision in July 2011 to transfer commissions to other LabCorp employees. Compl. ¶¶ 26, 31, 53. LabCorp correctly points out that this decision occurred nearly five years before this action was brought in D.C. Superior Court—well outside the three-year statute of limitations period. Def.'s Mot. 7; Def.'s Reply 2. In his opposition brief, Billups concedes (as he must) that the transfer occurred outside the limitations period, Pl.'s Resp. 4–5; *see also* Compl. ¶¶ 26–34, but contends that his action is not time barred, at least not entirely, because LabCorp "did not simply breach the Plan only one single time," Pl.'s Resp. 4. In Billups' view, the July 2011 transfer by LabCorp created a "continuing breach of contract" where "the Plan was repeatedly breached each time that commissions due to Plaintiff were not paid by Defendant." *Id.* Billups does not cite any case law or other authority in support of his "continuing breach" theory.

Unfortunately for Billups, the District of Columbia has "expressly reject[ed], as without any legal foundation, [the] theory of a 'continuing' breach of contract." *Press v. Howard Univ.*, 540 A.2d 733, 735 (D.C. 1988). Indeed, *Press* is the leading case. There, a doctor claimed that his employer, Howard University, had breached his employment contract by wrongfully suspending him from clinical duties, causing him to lose future income under a profit-sharing plan. *Id.* at 734. The suspension occurred outside the limitations period, but the losses resulting from the suspension were realized both within and without the limitations period. *Id.* The D.C. Court of Appeals held that the action was

6

time barred because the claim necessarily accrued at the time of the doctor's suspension: "[T]he alleged breach of contract—the suspension—occurred only once; Press was not re-suspended at regular intervals during the three-year period." *Id.* at 735; *see also Wright v. Howard Univ.*, 60 A.3d 749, 751–54 (D.C. 2013); *Jones v. Howard Univ.*, 574 A.2d 1343, 1347–48 (D.C. 1990).

*Press* is clearly controlling here. Like the doctor in that case who lost the right to earn and receive future profit-sharing payments as a result of his suspension, here Billups alleges that he lost the right to earn and receive future commissions "[a]s a result" of the July 2011 transfer. Compl. ¶ 53. This transfer "occurred only once," *Press*, 540 A.2d at 735, and Billups suit is, therefore, premised on "a single event, discrete in time, from which all damages flow." *Keefe Co. v. Americable Intern, Inc.*, 755 A.2d 469, 476 (D.C. 2000). Because this "single deed by [LabCorp] caused all of [Billups'] alleged travail," *Jones*, 574 A.2d at 1348, the transfer is necessarily the point at which the alleged breach of contract occurred, the cause of action accrued, and the statute of limitations began to run. It makes no difference that but for the transfer, some commissions would have been paid to Billups within the limitations period. To be sure, the loss of these additional payments might have affected the damages calculation at the conclusion of a successful action. But they cannot restart the statutory clock. "[I]t is settled in this jurisdiction that the absence of substantial or consequential damages does not prevent the limitations period from beginning to run." *Wright*, 60 A.3d at 753 (internal quotation marks omitted).

As such, I must conclude that Billups' breach of contract claim is barred by the statute of limitations. The District requires actions on a contract to be brought within three

years from the time the cause of action accrues. Billups' cause of action accrued when LabCorp transferred the right to earn commissions in July 2011; yet, he waited until April 2016 to file this suit. His claim is therefore untimely, and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Breach of Contract

LabCorp also seeks to dismiss this action on the alternative ground that the company did not breach its contract with Billups. Although it is unnecessary to rule on this issue in light of my holding on the statute of limitations, it does provide a separate basis for dismissal of this action. The complaint alleges that Billups is "entitled to receive sales commissions from revenue obtained from Maryland-based sales from the GW account" and that LabCorp breached the Plan "[a]s a result of the transfer of [these] commissions . . . to other LabCorp employees." Compl. ¶¶ 51, 53. But the Plan expressly provides that "LabCorp reserves the right to 'alter, change, redefine, reduce, or expand the geographic area' of an SME." *Id.* ¶ 33 (quoting Plan at 5). And that is precisely what the July 2011 transfer accomplished. Prior to the transfer, Billups received commissions on sales to all GW facilities in the District of Columbia and in Maryland. *Id.* ¶¶ 16-25. After the transfer, Billups continued to receive commissions on sales to GW facilities in the District, but no longer received commissions on sales to GW facilities in Maryland. *Id.* ¶ 31. In other words, LabCorp "reduce[d] . . . the geographic area" assigned to Billups. *Id.* ¶ 33 (quoting Plan at 5). Because LabCorp's action is plainly contemplated by the express terms of the Plan, it cannot support a breach of contract claim.

Billups all but concedes the point. In his opposition to LabCorp's motion to dismiss, he acknowledges that "the Plan is favorable to Defendant in allowing LabCorp a high level of discretion in performance of the Contract." Pl.'s Resp. 8. He nevertheless attempts to save his argument by recasting it not as claim for a breach of contract *per se*, but as a claim for a breach of the implied covenant of good faith and fair dealing. *Id.* at 6–9. This effort, unfortunately, is doomed.

First, Billups failed to plead a breach of the implied covenant. The complaint includes just one count, for breach of contract. *See* Compl. ¶¶ 49–53. In every contract, to be sure, "there is an implied covenant of good faith and fair dealing." *Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004) (quoting *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985)).[4] But "claims for breach of this implied covenant a[re] separate claims from traditional breach of contract claims," *id.* (collecting cases); *see also Hamm v. Blue Cross & Blue Shield of N.C.*, No. 05 CVS 5606, 2010 WL 5557501, at *10 (N.C. Super. Aug. 27, 2010) (unpublished) (dismissing implied covenant claim because "a breach of a contract does not, by itself, breach this implied covenant"), and here, the complaint, on its face, does not purport to state a claim for breach of the implied covenant. That omission is fatal because a "plaintiff cannot add a new claim through an opposition brief." *Williams v. Spencer*, 883 F. Supp. 2d 165, 181 n.8 (D.D.C. 2012) (collecting cases).

---

[4] By its terms, the Plan "shall be construed in accordance with the laws of the State of North Carolina." Plan at 7. Billups does not contest this choice of law provision; indeed, he cites North Carolina case law to establish the implied covenant of good faith and fair dealing. *See* Pl.'s Resp. 6.

9

But even if Billups had properly alleged a breach of the implied covenant of good faith and fair dealing in his complaint, the claim would necessarily fail because, as discussed above, the Plan expressly permits LabCorp to alter the geographic areas for which its SMEs are responsible. It is axiomatic that "[t]he implied covenant of good and fair dealing cannot contradict, modify, negate, or override the express terms of a contract." 17A C.J.S. *Contracts* § 437 (2016). Numerous cases applying North Carolina law hinge on this well-worn rule. *See, e.g., Rich Food Servs., Inc. v. Rich Plan Corp.*, 98 F. App'x 206, 211 (4th Cir. 2004) (holding implied covenant did not control where "it would conflict with the express contractual terms" (citing *Campbell v. Blount*, 210 S.E.2d 513, 515 (N.C. 1975))); *Polygenex Int'l, Inc. v. Polyzen, Inc.*, 515 S.E.2d 457, 461–62 (N.C. Ct. App. 1999) (affirming trial court's determination that a breach of the implied covenant of good faith could not exist absent a breach of the terms of the contract); *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, No. 12 CVS 5505, 2014 WL 1878885, at *15 (N.C. Super. May 7, 2014) (unpublished) (dismissing breach of implied covenant claim where contract "specifically permits" the behavior at issue), *aff'd*, 781 S.E.2d 889 (N.C. Ct. App. 2016). Accordingly, because the Plan expressly authorizes LabCorp to revise the geographical territories assigned to its SMEs, LabCorp could not breach the implied covenant of good faith and fair dealing by reassigning the Maryland territories from Billups to other SMEs.

In sum, then, even if this action were not barred by the statute of limitations, the Court would hold on the merits that Billups fails to properly allege a breach of the Plan.

On either ground, the complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Court GRANTS LabCorp's Motion to Dismiss Plaintiff's Complaint. This action is dismissed in its entirety.

An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge